# United States District Court
## for the Northern District of Oklahoma

Case No. 26-cv-420-JDR-SH

IHOR B.,

*Petitioner,*

*versus*

VIC REGALADO, *in his official capacity as Sheriff of Tulsa County and Custodian of David L. Moss Criminal Justice Center*; STACIE HOLLOWAY, *in her official capacity as Jail Administrator of David L. Moss Criminal Justice Center*; ROBERT CERNA, *in his official capacity as Acting Field Office Director, U. S. Immigration and Customs Enforcement, Enforcement and Removal operations, Dallas Field Office*; DAVID J. VENTURELLA, *in his official capacity as Senior Official Performing the Duties of the Director, U.S. Immigration and Customs Enforcement*; MARKWAYNE MULLIN, *in his official capacity as Secretary, U.S. Department of Homeland Security*; *and* TODD BLANCHE, *in his official capacity as Acting Attorney General of the United States,*

*Respondents.*

## OPINION AND ORDER

Petitioner Ihor B., a Ukrainian citizen, petitions for a writ of habeas corpus under 28 U.S.C. § 2241 claiming he is unlawfully detained by federal immigration authorities. Dkt. 2. He separately moves for a temporary restraining order, a preliminary injunction, his immediate release, and an order to show cause for his continued detention. Dkt. 3. On preliminary review of the petition and motion, and for the reasons stated in this Order, the Court summarily dismisses the Petition and denies the Motion.

No. 26-cv-420

## I

Petitioner is a Ukrainian citizen. Dkt. 2 at 2, 4; Dkt. 3 at 2.[1] Sometime before October 2024, he applied for admission to the United States and was temporarily paroled into the country, under 8 U.S.C. § 1182(d)(5)(A), for humanitarian reasons.[2] Dkt. 2 at 4, 6. Petitioner applied for re-parole in January 2026. Dkt. 2 at 4-5; Dkt. 3-2 at 2; Dkt. 3-3 at 4, 7. In May 2026, the United States Citizenship and Immigration Services ("USCIS") approved his application, permitting him to remain lawfully present in the United States until April 6, 2028. Dkt. 2 at 5; *see also* Dkt. 3-3 at 2.

On June 30, 2026, Petitioner was detained by the United States Immigration and Customs Enforcement after an encounter with Oklahoma Highway Patrol. Dkt. 2 at 5; Dkt. 3-2 at 2. Since that time, he has been detained at the David L. Moss Correctional Center in Tulsa, Oklahoma. *Id.* An ICE officer served Petitioner with a Notice to Appear and scheduled him for a

---

[1] The facts in this section are drawn from the Petition, Motion, and exhibits attached to the Motion and are accepted as true for purposes of this Order. The Court's citations refer to the CM/ECF header pagination. Unless quoting language from a statute, regulation, or court decision, the Court uses the term "noncitizen" as equivalent to the term "alien." *See Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020); 8 U.S.C. § 1101(a)(3) ("The term 'alien' means any person not a citizen or national of the United States."). Lastly, throughout the Petition and Motion, Petitioner refers to the collective actions of "Respondents" that resulted in his allegedly unlawful immigration detention. But two local officials are named as respondents only because they are responsible for housing immigration detainees in the county jail. For clarity, the Court thus refers to the named respondents who are federal officers or officials, collectively, as "Federal Respondents" and, if discernible from Petitioner's allegations, refers to the actions of specific federal officers or officials where appropriate.

[2] Petitioner does not identify when or where he applied for admission to the United States, but he submitted a copy of an Illinois driver's license issued to him in October 2024 that reflects an Illinois address. Dkt. 3-3 at 8. The Court thus finds it reasonable to infer that he applied for admission and to the United States and was initially granted temporary parole sometime before October 2024.

No. 26-cv-420

hearing before an immigration judge on July 13, 2026.[3] *Id.* Petitioner's "[c]ounsel has not been provided with any written [Department of Homeland Security ("DHS")] custody determination explaining why Petitioner's continued detention is required, any individualized flight-risk or danger determination, or any written parole-termination decision other than the reported NTA." Dkt. 2 at 5; *see also* Dkt. 3-2 at 3.

Petitioner is not subject to a final order of removal. Dkt. 2 at 5. He has a stable address in Chicago, Illinois, prior employment history in the United States, and ongoing humanitarian considerations arising from the war in Ukraine. *Id.* Petitioner's counsel is not aware of any criminal conviction or criminal court order that would require Petitioner's detention. Dkt. 3-2 at 3.

## II

Section 2241 authorizes a federal district court to grant a writ of habeas corpus to a person "in custody under or by color of the United States," or "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (c)(3); *see also* 28 U.S.C. § 2241(a) (empowering federal district courts to grant habeas relief "within their respective jurisdictions"). This authority extends to habeas petitions filed by noncitizens to challenge the lawfulness of their detention by federal immigration authorities. *See Munaf v. Green*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention."); *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

---

[3] A notice to appear is a charging document that commences an immigration removal proceeding. *Miguel-Pena v. Garland*, 94 F.4th 1145, 1150 (10th Cir.), *cert. denied*, 145 S. Ct. 545 (2024); *see also* 8 U.S.C. § 1229(a)(1) (discussing service and contents of notice to appear); *Niz-Chavez v. Garland*, 593 U.S. 155, 163-64 (2021) (stating that "[a] notice to appear serves as the basis for commencing a grave legal proceeding" and likening it to "an indictment in a criminal case [or] a complaint in a civil case").

No. 26-cv-420

Petitioner identifies four claims, asserting his detention: (1) violates 28 U.S.C. § 2241; (2) violates his Fifth Amendment right to procedural due process;[4] (3) is based on "agency action contrary to law and arbitrary and capricious"; and (4) entitles him to declaratory and injunctive relief. Dkt. 2 at 7-9. Petitioner premises each claim on his contention that he is not lawfully detained because (1) USCIS recently approved his re-parole, permitting his lawful presence in the United States through April 6, 2028, and (2) no DHS official complied with applicable statutory and regulatory procedures to terminate his parole before detaining him. *Id.*; *see also* Dkt. 3. He seeks various forms of relief, but primarily asks this Court to order his immediate release "under his existing parole grant and any reasonable conditions already authorized by regulation" or, in the alternative, to require Federal Respondents "to provide within 24 hours a written custody and parole-termination decision, all relevant detention records, and an individualized hearing at which the government bears the burden of justifying continued custody by clear and convincing evidence." Dkt. 2 at 9.

A court entertaining a habeas petition "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the . . . person detained is not entitled thereto." 28 U.S.C. § 2243; *see also id.* (providing that the court considering a habeas petition "shall summarily hear and determine the facts, and dispose of the matter as law and justice require"). Because § 2243 contemplates summary dismissal, a district court must promptly

---

[4] Petitioner does not expressly label his Fifth Amendment claim as a procedural due process claim. Dkt. 2 at 7. But the crux of his complaint is that Federal Respondents deprived him of a liberty interest without "fair procedures" and "adequate notice." *Id.* This is the essence of a procedural due process claim. *See, e.g., Santillan Quiroz v. Mullin*, ____ F.4th ____, 2026 WL 1876709, at *16 n.12 (June 30, 2026) (assuming "for sake of argument that questions about the types of justifications capable of supporting detention sound in substantive due process, while questions about procedures used for proving the satisfaction of a given justification sound in procedural due process.").

examine a habeas petition and must summarily dismiss it "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Rule 4, *Rules Governing Section 2254 Cases in the United States District Courts* ("Habeas Rule 4"); *see also* Rule 5(a), *Rules Governing Section 2254 Cases in the United States District Courts* ("Habeas Rule 5") ("The respondent is not required to answer the petition unless a judge so orders."). Though Habeas Rules 4 and 5 ordinarily apply in cases challenging present or future custody under a state-court judgment, a district court may apply them when a petitioner seeks relief under § 2241. Rule 1(a), (b), *Rules Governing Section 2254 Cases in the United States District Courts*. The Court applies them here and finds that the Petition should be summarily dismissed, without a response or hearing, because it is plainly apparent from the facts alleged that Petitioner is not detained in violation of the Constitution or federal law.

### A

Preliminarily, the Court considers whether it has jurisdiction to adjudicate any claims asserted in the Petition. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Congress limits the exercise of federal habeas jurisdiction in the immigration context. *See, e.g.*, 8 U.S.C. §§ 1226(e), 1252. To the extent Petitioner's claims assert that he is detained either in violation of his Fifth Amendment right to procedural due process or in violation of federal law governing pre-removal detention, the Court finds that it has jurisdiction to review those claims. *See, e.g.*, *Ozturk v. Hyde*, 136 F.4th 382, 394-401 (2d Cir. 2025) (thoroughly discussing § 1252's jurisdiction-stripping provisions and finding that none barred habeas review of the petitioner's "challenges [to] her unlawful detention, pending [removal] proceedings"); *Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006) (noting that jurisdiction-stripping provisions of § 1252 that were adopted through "the Real ID Act eliminate[d] a district court's jurisdiction over habeas petitions challenging final orders of removal.

No. 26-cv-420

The Real ID Act did not, however, eliminate a district court's jurisdiction to review habeas petitions challenging an alien's detention.").[5]

But to the extent any claims could be construed, in whole or in part, as challenging any discretionary decisions made by the DHS Secretary to terminate Petitioner's parole, the Court finds that it does not have jurisdiction over those claims. Section 1252(a)(2)(B) bars habeas review of "any judgment regarding the granting of relief under" five specific provisions of the Immigration and Nationality Act and of "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under [Subchapter II of the INA (§§ 1151 to 1382)] to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a)." 8 U.S.C. § 1252(a)(2)(B); *see Hamilton v. Gonzales*, 485 F.3d 564, 567 & n.6 (10th Cir. 2007) (stating that "[s]ection 1252(a)(2)(B) strips jurisdiction over decisions committed to agency discretion regardless of whether the decision is made in the removal process" and noting that "conditional terms such as 'may' and 'at any time,'" are "indicative of administrative discretion"). As further discussed below, *see supra* section II-B, Congress gave the DHS Secretary discretion to grant temporary parole to noncitizens applying for admission to the United States and to terminate parole through § 1182(d)(5)(A), a provision that falls within Subchapter II of the INA. Section 1182(d)(5)(A) provides that the DHS Secretary "*may* parole into the United States temporarily *under such conditions as he may prescribe* only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States" and that "when the purposes of such parole shall, *in the opinion of the Secretary of Homeland Security*, have been served the alien shall forthwith return or be returned to the custody from which he was paroled" 8 U.S.C. § 1182(d)(5)(A)

---

[5] Real ID Act of 2005, Pub. L. No. 109–13, Div. B, 119 Stat. 302, codified on May 11, 2005.

No. 26-cv-420

(emphases added)).[6] Section 1252(a)(2)(B)(ii) thus precludes judicial review of DHS's discretionary decision to grant or terminate temporary parole. *See Bouarfa v. Mayorkas*, 604 U.S. 6, 17 (2024) (explaining that § 1252(a)(2)(B)(ii) bars judicial review of decisions "made discretionary *by legislation.*" (emphasis in original) (quoting *Kucana v. Holder*, 558 U.S. 233, 246-47 (2010)). Judicial review likewise is barred to the extent Petitioner invokes the Administrative Procedures Act to seek review of any discretionary decisions regarding termination of parole that were made by DHS officials. Dkt. 2 at 4, 9; *see* 5 U.S.C. § 701(a) (providing that Chapter 7 of the APA, governing judicial review of administrative actions "applies, according to the provisions thereof, except to the extent that- - (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law").

## B

Given the just discussed jurisdictional limits on habeas review, the Court discerns only one potentially viable claim: a Fifth Amendment procedural due process claim alleging DHS did not comply with federal law to terminate Petitioner's parole before detaining him.[7] On the facts alleged though, that claim lacks any arguable basis in the law.

---

[6] The DHS Secretary's discretion under § 1182(d)(5)(A) also may be exercised by certain other DHS officials. 8 C.F.R. § 212.5(a).

[7] Petitioner's first claim contends his detention "violates" § 2241. Dkt. 2 at 7. But this is not a cognizable claim because § 2241 is a remedial statute that permits a petitioner to seek relief for alleged violations of rights guaranteed by the Constitution or other federal law. *See Preiser v. Rodriguez*, 411 U.S. 475, 485-86, 500 (1973) (describing a writ of habeas corpus "as a *remedy* available to effect discharge from any confinement contrary to the Constitution or fundamental law" and "the *specific instrument* to obtain release from [allegedly unlawful] confinement," and holding that when a prisoner "challeng[es] the very fact or duration of his physical imprisonment" and "seeks . . . immediate release . . . from that imprisonment, his sole federal *remedy* is a writ of habeas corpus" (emphases added)); *cf. Brown v. Buhman*, 822 F.3d 1151, 1162 (10th Cir. 2016) (noting that "§ 1983 is a remedial vehicle for raising claims based on the violation of constitutional rights" and that "[t]here can be no 'violation' of § 1983 separate and apart from the underlying constitutional

*(footnote continues)*

7

No. 26-cv-420

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty protected by the Due Process Clause." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). And "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. But the Supreme Court "has recognized detention during [removal] proceedings as a constitutionally valid aspect of the [removal] process." *Demore*, 538 U.S. at 523. The Supreme Court also "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522; *see also Jennings v. Rodriguez*, 583 U.S. 281, 314 (2018) ("'[D]ue process is flexible,' . . . and it 'calls for such procedural protections as the particular situation demands.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972))). A noncitizen challenging his detention by the Executive Branch "bears the burden to demonstrate that no law justifies his detention or that the law that does so is unconstitutional." *Cisneros v. Noem*, 820 F. Supp. 3d 1265, 1269 (D. Utah 2026) (cleaned up).

---

violations."). Further, even if Petitioner's third claim asserts an APA claim not barred by 5 U.S.C. § 701(a), a different provision of the APA precludes review because Petitioner relies on the same facts and seeks the same relief for the APA claim and the Fifth Amendment claim, showing that he has an adequate remedy under § 2241 without resorting to the APA. Dkt. 2 at 7-9; *see* 5 U.S.C. § 704 (providing that "[a]gency action made reviewable by statute and final agency action *for which there is no other adequate remedy in a court* are subject to judicial review" under the APA (emphasis added)); *cf. Trump v. J.G.G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring) (noting "that habeas corpus, not the APA, is the proper vehicle" for immigration detainees "to bring claims seeking to bar their transfers" because those claims "have long been" subject to review through habeas actions). Finally, Petitioner's fourth claim seeks a declaration that his detention is unlawful and an injunction ordering Respondents to, *inter alia*, immediately release him. Dkt. 2 at 8. This claim too effectively duplicates his request for a writ of habeas corpus directing his immediate release which necessarily would not issue unless he shows his detention is unlawful.

No. 26-cv-420

The facts alleged by Petitioner, even if true, make it plainly apparent that Petitioner cannot meet that burden.[8] Petitioner claims he is unlawfully detained because he was temporarily paroled into the United States and recently re-paroled by USCIS for humanitarian reasons, and no DHS official complied with statutory and regulatory requirements to terminate his parole before detaining him. Dkts. 2, 3. More specifically, he asserts he was detained "without adequate notice, an individualized custody determination, a meaningful opportunity to respond, or prompt review by a neutral decisionmaker or authorized DHS official applying lawful standards." Dkt. 2 at 7. He appears to contend these requirements must be met to properly terminate temporary parole. *See id.* ("If Respondents contend parole was terminated, they must identify the authorized official, the basis for the opinion that neither humanitarian reasons nor public benefit continues to warrant Petitioner's presence, and the individualized public-interest basis for custody rather than supervised release."). He also asserts that "[d]ue process requires, at minimum, prompt written notice of the factual and legal basis for custody, production of relevant records, counsel access, and immediate individualized review with the government bearing the burden to justify continued custody." *Id.*

Neither the Fifth Amendment, § 1182(d)(5)(A), nor 8 C.F.R. § 212.5 provides legal support for Petitioner's position. As to the Fifth Amendment, "[m]any controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by

---

[8] Because Petitioner's facts do not support that he is unlawfully detained, he has not shown a substantial likelihood of success on the merits or irreparable harm, both of which are necessary to justify issuance of a temporary restraining order or a preliminary injunction ordering Federal Respondents to immediately release him. *See Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) (discussing showings necessary to enter a preliminary injunction under Fed. R. Civ. P. 65); Fed. R. Civ. P. 65. The Court thus denies the Emergency Motion for Temporary Restraining Order, Preliminary Injunction, Immediate Release, and Order to Show Cause.

No. 26-cv-420

notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). The statute relevant to the grant and termination of temporary parole for a noncitizen says nothing about notice or a hearing, much less the individualized review, written explanation of reasons, production of documents, access to counsel, and custody hearing that Petitioner contends must be provided to him before DHS can lawfully terminate his parole and detain him. Rather, § 1182(d)(5)(A) provides:

> The Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and *when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.*

8 U.S.C. § 1182(d)(5)(A) (emphasis added).[9] At most, this text supports that a noncitizens individualized circumstances should inform the DHS

---

[9] The language in § 1182(d)(5)(A) that precludes parole from being "regarded as an admission" is consistent with a legal fiction, sometimes called the "entry fiction," that "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are "treated" for due process purposes "as if stopped at the border." *DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953); and citing *Leng May Ma v. Barber*, 357 U.S. 185, 188-190 (1958); *Kaplan v. Tod*, 267 U.S. 228, 230–231 (1925)); *see also Sierra v. Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1218 (10th Cir. 2001) (applying "entry fiction" to reject noncitizen's habeas challenge to "the procedures used to withdraw his parole under the Mariel Cuban regulations, 8 C.F.R. § 212.12," reasoning that while the noncitizen had "been physically present in the United States for more than twenty years," the law treated him as "detained at the border and hence as never having effected entry into this country," and concluding that the noncitizen had no "liberty interest in being released on parole").

No. 26-cv-420

Secretary's decision to grant temporary parole. But to terminate parole, the text merely requires the DHS Secretary (or one of his delegates) to form an opinion that the purpose of parole has been served.

The federal regulation implementing § 1182(d)(5)(A), however, provides more detailed guidance on the process of granting and terminating temporary parole. 8 C.F.R. § 212.5. But it also does not impose the list of procedural requirements Petitioner identifies. Under this regulation, parole terminates automatically either (1) when a temporary parolee leaves the United States or, (2) if the parolee has not departed before the expiration of the authorized term of parole, upon expiration of the authorized term. 8 C.F.R. § 212(e)(1). In all other cases, written notice is required to terminate parole. Specifically,

> [i]n cases [not covered by automatic termination of parole], upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, *parole shall be terminated upon written notice to the alien* and he or she shall be restored to the status that he or she had at the time of parole. *When a charging document is served on the alien, the charging document will constitute written notice of termination of parole*, unless otherwise specified. Any further inspection or hearing shall be conducted under section [1225] or [1229a] of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody.

8 C.F.R. § 212.5(e)(2) (emphases added). Simply put, the applicable regulation requires a DHS official to provide the noncitizen with written notice of termination of parole, and a charging document can serve as written notice.

No. 26-cv-420

*Id.*; *see Matter of Arambula-Bravo*, 28 I. & N. Dec. 388, 395 (BIA 2021) (noting that "no hearing is required to terminate parole"; stating that, "[i]nstead of allowing noncitizens to prepare for a contested hearing, the importance of an NTA as a notice of termination is in definitively communicating the DHS's intent with respect to parole status"; and reasoning that a "charging document [including an NTA] presumptively terminates parole because an intent to remove a noncitizen necessarily reflects a determination that the continued presence of that individual is no longer warranted").

Petitioner alleges an ICE officer served him with an NTA when he was detained. Dkt. 2 at 5. Petitioner therefore received written notice of DHS's intent to terminate his parole and its decision that his continued lawful presence was no longer warranted. *See* 8 C.F.R. § 212.5(e)(2); *Matter of Arambula-Bravo*, 28 I. & N. Dec. at 395. Petitioner tries and fails to distinguish *Matter of Arambula-Bravo* by arguing "[t]hat case does not eliminate this Court's habeas jurisdiction over the legality of detention, nor does it immunize arbitrary, unexplained, or constitutionally defective re-detention from judicial review." Dkt. 2 at 6. The Court agrees that *Matter of Arambula-Bravo* does not deprive this Court of jurisdiction to consider the lawfulness of his detention. But it does foreclose Petitioner's assertions that he did not receive written notice of the termination of his parole, as required by 8 C.F.R. § 212(e)(2), and that no DHS official complied with the applicable regulation to terminate his parole before detaining him. This is fatal to his claim that his detention is "constitutionally defective" based on an alleged violation of his right to procedural due process.

Moreover, the plain text of § 1182(d)(5)(A) authorizes detention upon termination of parole. Again, it states that "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien *shall forthwith return or be returned to the custody from which he was paroled*." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). The Petition is silent as to "the custody from which [Petitioner] was paroled." Dkt. 2, generally. But

12

No. 26-cv-420

he states he "was initially paroled into the United States under humanitarian parole." *Id.* at 4. And temporary parole under § 1182(d)(5)(A) is the sole avenue of release when applicants for admission to the United States are initially detained under 8 U.S.C. § 1225(b) upon inspection at the border. *Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018).[10] Plainly, if Petitioner was initially paroled into the United States after being detained under § 1225(b), that is the custody he "shall be returned to" upon termination of his parole. *See Matter of Li*, 29 I. & N. Dec. 66, 69–70 (BIA 2025) (reasoning that "an alien detained under section [1225(b)] who is released from detention pursuant to a grant of parole under section [1182(d)(5)(A)], and whose grant of parole is subsequently terminated, is returned to custody under section [1225(b)] pending the completion of removal proceedings"). Thus, upon termination of his parole, Petitioner would be again subject to detention under § 1225(b), pending the conclusion of his removal proceeding. *Jennings*, 583 U.S. at 297. And, on the facts alleged, that removal proceeding is ongoing because Petitioner was scheduled for a hearing before an immigration judge on July 13, 2026, and is not subject to a final removal order. Dkt. 2 at 5.

In sum, the facts alleged do not plausibly support Petitioner's claim that he is detained in violation of his Fifth Amendment right to procedural due process.

---

[10] "All aliens . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3). A noncitizen is "deemed" to be "an applicant for admission," if the noncitizen is "present in the United States" and "has not been admitted" or if the noncitizen "arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1).

13

No. 26-cv-420

## III

For the reasons stated, the Court concludes the Petition shall be summarily dismissed without prejudice, for lack of jurisdiction and failure to state any claims on which relief may be granted, and the Motion shall be denied.

IT IS ORDERED that the Verified Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and Complaint for Emergency Declaratory and Injunctive Relief [Dkt. 2] is dismissed without prejudice; the Emergency Motion for Temporary Restraining Order, Preliminary Injunction, Immediate Release, and Order to Show Cause [Dkt. 3] is denied; and a separate judgment of dismissal shall be entered herewith.

IT IS FURTHER ORDERED that the Clerk of Court shall send, electronically, a courtesy copy of the Petition, this Order, and the Judgment of Dismissal to Clinton Johnson, United States Attorney for the Northern District of Oklahoma.

DATED this 15th day of July 2026.

JOHN D. RUSSELL
*United States District Judge*

14